IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS W. DiPIETRO, a minor, by and through EDWARD D. DiPIETRO and KATHLEEN DiPIETRO, his parents and natural guardians, and EDWARD D. DiPIETRO and KATHLEEN DiPIETRO in their own right | : | CIVIL ACTION |
| vs. | : | |
| POOLMASTER, INC. | : | NO. 13-1091 |

## O R D E R

AND NOW, this          day of                    , 2014, upon consideration of the Petition for Minor's Compromise in the above action, it is hereby ORDERED and DECREED that the parties may compromise this action upon the terms of the proposed compromise set forth in the Petition filed by Edward D. DiPietro and Kathleen DiPietro, as parents and natural guardians of the minor plaintiff, as a result of a settlement of Petitioners' claims against defendant, Poolmaster, Inc.  Petitioners are authorized to pay the following medical lien, counsel fees and expenses from the amount the minor plaintiff is entitled to receive in this action:

| | |
|---|---:|
| Gross Settlement Amount | $ 50,000.00 |
| Attorney's Fee (reduced to 30%) (Referral fee of 25% to be paid from this amount to Steven Bazil, Esquire) | 15,000.00 |
| Capital Blue Cross medical lien | 750.00 |
| Edward D. DiPietro and Kathleen DiPietro | 1,000.00 |
| Litigation costs | 8,196.56 |
| Edward D. DiPietro and Kathleen DiPietro, parents and natural guardians of Nicholas DiPietro, in trust pursuant to Pa. R.C.P. 2039(a) | $ 25,053.44 |

Upon payment by and on behalf of defendant, Poolmaster, Inc., all claims arising out of the injuries sustained by the minor plaintiff on July 5, 2011 are released, satisfied and paid in full.

Plaintiffs are directed to execute a General Release and to discontinue the above action with prejudice.

It is further Ordered and Decreed that upon payment of the counsel fees and other authorized expenses in accordance with Pa. R.C.P. 2039(a), the balance of the fund is to be paid to the minor plaintiff's parents and natural guardians, Edward D. DiPietro and Kathleen DiPietro, in trust for Nicholas DiPietro

Petitioners' proof of deposit of the aforementioned money shall be promptly filed of record.

                                        BY THE COURT:


                                        _____
                                                         J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS W. DiPIETRO, a minor, by and through EDWARD D. DiPIETRO and KATHLEEN DiPIETRO, his parents and natural guardians, and EDWARD D. DiPIETRO and KATHLEEN DiPIETRO in their own right, Plaintiffs | : CIVIL ACTION : : : |
| vs. | : |
| POOLMASTER, INC., Defendant | : NO. 13-1091 |

**PLAINTIFFS' PETITION FOR APPROVAL
OF MINOR'S COMPROMISE, SETTLEMENT
DISCONTINUANCE AND DISTRIBUTION**

Petitioners, Nicholas DiPietro, a minor, and his parents, Edward D. DiPietro and Kathleen DiPietro, by and through their counsel, Justin J. McCarthy, Esquire, hereby respectfully petition in accordance with Pa. R.C.P. 2039 for approval of a settlement agreement reached between the plaintiffs and defendant, and in support thereof aver as follows:

1. Plaintiffs, Edward D. DiPietro and Kathleen DiPietro, are the parents and natural guardians of the minor plaintiff, Nicholas DiPietro ("minor plaintiff"). The DiPietro family resides at 14 Michelle Circle, Montgomery County, Gilbertsville, PA 19525.

2. The minor plaintiff, Nicholas DiPietro, was born on June 11, 2000 and was 11 years old on the day of his injury, July 5, 2011.

3. This action was brought to recover damages for injuries sustained by Nicholas DiPietro, the minor plaintiff, for facial scarring and other injuries resulting from an occurrence described more fully in the following paragraphs.

4. On July 5, 2011, minor plaintiff and his brother were playing at the home of their friends and neighbors, Alec Brisbois and Colin Brisbois, in the swimming pool area of the Brisbois family home.

5. The boys had been playing with water guns and like toys including the Jumbo Hot Shots Power Water Launcher, Model No. 72572, ("water launcher") which was manufactured by defendant, Poolmaster, Inc. of Sacramento, California. The water launcher consists of an inner plastic tube with a plunger (cap) attached to its end which is inserted into an outer plastic tube.

6. As Alec Brisbois was swinging or twirling the water launcher, the two tubular pieces of the toy separated and one part became a projectile, flew across the pool and struck minor plaintiff in the face as he was standing by the pool.

7. Nicholas DiPietro sustained a deep laceration between his eyes which required sutures to repair. He also suffered from headaches for a time.

8. In addition to a scar minor plaintiff is left with a small, permanent patch of numbness in the hairline area of his forehead and scalp less than the size of a quarter.

9. Daniel Westawski, M.D., plastic surgeon, evaluated the minor plaintiff's scar and submitted a report dated March 20, 2013 in which he describes the minor's injury and his prognosis. Dr. Westawski's report is attached hereto as Exhibit "A."

10. Dr. Westawski conducted a follow up examination of Nicholas on December 27, 2013 to address an area of numbness at Nicholas DiPietro's hairline at his

mid-forehead. A copy of Dr. Westawski's December 27, 2013 report is attached hereto as Exhibit "B."

11. On March 28, 2014, the parties participated in a mediation conference conducted by Peter A. Dunn, Esquire at which time defendant, Poolmaster, Inc., agreed to pay the sum of $50,000.00 in settlement of the minor plaintiff's claim. In addition to the payment of $50,000.00, defendant has agreed to pay the full amount of the Petitioners' portion of the mediator's fee. His fee due from each party was $2000.00.

12. There now remain no disputed issues of fact between and among the parties.

13. Petitioners believe that the compromise achieved is in the best interest of their son, Nicholas, and is fair compensation for his injuries and for their own losses.

14. Justin J. McCarthy, Esquire was retained by plaintiffs under a contingent fee agreement which encompassed the investigation of and prosecution of plaintiffs' claims for the injuries to the minor and their losses as his parents. A copy of the contingent fee agreement is marked as Exhibit "C," attached hereto and incorporated herein.

15. McCarthy respectfully requests approval of the attorney's fee outlined in Exhibit "C" and reimbursement for the disbursement of his advanced costs described below.

16. Plaintiffs' counsel litigated this matter for two years, visited the site of minor plaintiff's injury and plaintiffs' house on two occasions, photographed the site of the injuries, took and/or attended six oral depositions, and met with liability experts for both parties at Massachusetts Institute of Technology in Boston, MA where the toy was

examined. Plaintiffs' counsel also engaged a plastic surgeon to evaluate minor plaintiff's facial scar and numbness, attending the two evaluations by the plastic surgeon of the minor plaintiff with his father in Bryn Mawr, PA.

17.     McCarthy has voluntarily agreed to reduce his fee from 33 1/3% to 30% of the gross settlement proceeds.

18.     Petitioners believe that the attorney's fee sought by and for which we have petitioned on behalf of McCarthy is fair and reasonable and we are satisfied with the professional services he rendered to us and our son in connection with this matter.

19.     Plaintiffs' counsel incurred expenses on our behalf and on behalf of the minor plaintiff during the pendency of this action which are more fully set forth on Exhibit "D."

20.     The minor plaintiff's gross medical bills total approximately $5,107.00. Kathleen DiPietro's health insurance company, Capital Blue Cross, pursuant to its policy has paid $1,551.15 for the minor's bills.

21.     Capital Blue Cross has asserted a lien of $1,551.15 for which it has agreed to accept $750.00 in compromise and satisfaction.

22.     Petitioners respectfully request that this Honorable Court authorize its counsel, Justin J. McCarthy, Esquire, to make the distribution of the sums set forth in proposed Order filed with this Petition.

23.     After payment of the aforementioned lien, fees and costs, the net balance payable to the minor plaintiff is $25,053.44.

24. Petitioners are qualified within the meaning of Pa. R.C.P. 2039 to receive that amount as parents and natural guardians of the minor plaintiff, Nicholas DiPietro, who resides with and is maintained and supported by us, exclusively.

We, therefore, ask this Honorable Court:

(a) to approve the Order of compromise pursuant to the averments stated herein;

(b) authorize payment of the counsel fees and expenses above stated from the fund due to our son, Nicholas;

(c) direct that payment in trust of the net fund to the minor be made to Edward D. DiPietro and Kathleen DiPietro, as parents and natural guardians of Nicholas DiPietro, a minor.

WHEREFORE, plaintiffs, Nicholas DiPietro, a minor and Edward D. DiPietro and Kathleen DiPietro, respectfully request that this Honorable Court enter an Order approving the compromise of the aforementioned claim, allowing the counsel fees and costs set forth in the attached agreement and ordering distribution of the settlement proceeds.

Respectfully submitted,

_____
JUSTIN J. McCARTHY, ESQUIRE
The Commons at Lincoln Center
118 John Robert Thomas Drive
Exton, PA  19341
610-363-6104
Attorney I.D. No. 20152
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I, Justin J. McCarthy, Esquire, counsel for plaintiffs, certify that I served a true and correct copy of the within Petition for Approval of Minor's Compromise, Settlement, Discontinuance and Distribution on defense counsel listed below simultaneously when filing the Petition electronically with the Court on April 14, 2014.

Bradley D. Remick, Esquire
Marshall, Dennehey, Warner
Coleman & Goggin
2000 Market Street
Philadelphia, PA  19103

              *Justin J. McCarthy*
              JUSTIN J. McCARTHY, ESQUIRE
              The Commons at Lincoln Center
              118 John Robert Thomas Drive
              Exton, PA  19341
              610-363-6104
              Attorney I.D. No. 20152
              Attorney for Plaintiffs

# EXHIBIT "A"

Bryn Mawr
AESTHETIC PLASTIC SURGERY
DANIEL WESTAWSKI, MD, FACS

March 20, 2013

APR 0 1 2013

Attorney Justin J. McCarthy
The Commons at Lincoln Center
118 John Thomas Drive
Exton, PA 19341

**Re: DiPietro, Nicholas**
**DOB**: **06/11/2000**

Dear Mr. McCarthy:

Thank you very much for sending your client, Nicholas DiPietro, in for evaluation of a right forehead scar. As you may recall, this very pleasant 12-year-old who was involved in an accident on July 5, 2011, in which he was struck in the face with a piece from a plastic water gun while playing that day. He was initially seen at Pottstown Memorial Medical Center for emergency treatment of a right glabellar laceration. It was suture repaired at that time and he has gone on to heal with a resulting scar in the right glabellar region. I saw and evaluated him on February 26, 2013, slightly more than a year and half post injury. Nicholas has no other history of trauma to this right central forehead region.

Past medical history: Nicholas is a healthy young 12-year-old with no medical problems. He takes no medications and has no allergies. He has never had an operation and has no significant past medical history.

Social history: He is a student. He lives with his family at home. He is an avid athlete and is overall very active as a 12-year-old.

Family history: Demonstrates no significant medical issues.

Review of systems: Is completely normal.

**PHYSICAL EXAMINATION**: He is a developing 12-year-old Caucasian who is fairly thin. He is awake, alert, and oriented x3.
HEENT: He is normocephalic. He has an obliquely oriented scar at his right glabellar region extending from the medial eyebrow and nasal bridge at the root heading cephalad for 2.6 cm length. It is slightly raised and erythematous. He has full active range of motion of the facial muscles with normal pneumatics. He has normal sensation throughout the forehead with no areas of numbness. Otherwise, his exam is normal.

WWW.DRDANIELWESTAWSKI.COM
919 CONESTOGA RD, BLDG 2, SUITE 208 | ROSEMONT, PA 19010 | T 610.527.4050 | F 610.527.4054
1245 HIGHLAND AVE, SUITE G-05 | ABINGTON, PA 19001 | T 215.517.5360

DiPietro, Nicholas
March 20, 2013
Page 2

His pupils are equal, round, and reactive to light and accommodation. Extraocular muscles are intact. Mucous membranes are moist and anicteric. His forehead movement is symmetric and within normal appearance bilaterally.
He has no cervical adenopathy. His trachea is midline. He has no JVD in upright position. He has 2+ carotid pulses, are equal. He has no cervical adenopathy.

**IMPRESSION:** Healing right glabellar scar, 2.6 cm in length, raised and still slightly immature.

**PLAN:** I reviewed with Nicholas and his father who is here with him today treatment options for improvement in the appearance of the scar. Because of the thickness, steroid injections could be done to help thin it out. However, the appearance of the scar is now white and notable to be vertically oriented as opposed to following the natural skin creases. The other option would be a surgical reorientation of the scar with a local tissue rearrangement. This could be done under local anesthesia or with sedation at their convenience. The procedure will require excision of the old scar with reorientation of the surrounding skin to try and follow the natural skin creases and pull the majority of the scar as close to the eyebrow as possible to help hide it within the natural curves of the forehead. This procedure would take approximately 1 hour at a total cost between anesthesia facility fees and surgical fees being approximately $7000 to $10000. It is unlikely that any additional procedures would be needed, although he has achieved maximum medical improvement of the scar at this point. He will continue to grow and mature through his teenage years and as the appearance of the scar is likely to change during that time slightly.

I hope this information is helpful. This report is prepared after review of the medical records from Pottstown Memorial Medical Center as well as the photos you provided of his injury immediately postoperatively and a personal examination of Nicholas in my office on February 26, 2013. These recommendations are made with a reasonable degree of medical certainty. If I can offer any further information or assistance, please feel free to call me at any time.

Thank you very much for the opportunity to participate in Nicholas' care.

With best wishes,

Sincerely,

Daniel B. Westawski, MD

DBW:cbs/ls

# EXHIBIT "B"



**Bryn Mawr**
AESTHETIC PLASTIC SURGERY
DANIEL WESTAWSKI, MD, FACS

December 27, 2013

FEB 0 4 2014

Justin J. McCarthy, Esq.
The Commons at Lincoln Center
118 John Robert Thomas Drive
Exton, PA 19341-2654
Phone: 610-363-6104 Fax: 610-524-6532

RE: Nicholas DiPietro
DOB: 06/11/200

Mr. McCarthy,

I saw Nicholas today in follow-up as he had a persistent complaint to his father in that there is an area of his hairline that remains completely numb. He noticed this when combing his hair and found that there is a tuft of hair to the right of midline at the hairline that has no sensation. As his injury has continued to heal he had expected that this area to return to normal. He is now approximately 2 years post injury. He still has a patch of insensate skin at the very edge of the hairline. He has no tenderness or other areas of irritation. He reports no significant headaches. He is otherwise been in healthy and well, with no subsequent injuries.

On examination, his scar at the right medial eyebrow extends in a curvilinear vertical direction, for distance of 4 cm. The scar is 1.2 cm to the right of midline, which is very close to the beginning of the supratrochlear nerve as it exited is the supraorbital rim, and extends cephalad to the mid frontal scalp region. The scar is soft, and flaps. It is still pink. Ther is no evidence of hypertrophy or keloid scar.

The patch of numbness is exactly cephalad from the scar at the hairline and covers a distance of about 1-1/2 cm in diameter. It includes the scalp, and forehead skin, as well as the tuft of tear within this area posterior to this medial and lateral to this and he has fairly normal sensation. His examination included a cold sensation testing, as well as vibratory sense, and monofilament testing using the standardized Sam is a wine stain 5.07/10 g monofilament. He has full motor control of the frontalis as expected.

In conclusion, there appears to be an area of permanent numbness, associated with this injury, just at the hairline of his right central forehead. No other significant neural deficits were noted. This four- centimeter scar extending from the medial eyebrow in a vertical, cephalad direction, is

still pink in color, slightly indented, but overall has faded reasonably well. At this point, it has reached maximum medical improvement. No additional improvements in either the appearance of the scar or improvement in the area of numbness are expected. These changes are permanent and irreversible at this time.

I hope this information is helpful. These statements are made upon a personal examination of Nicholas and are made within a reasonable degree of medical certainty.
If I can offer any further information or assistance, please feel free to call me at anytime.

With best wishes I remain
Sincerely yours,

Daniel Westawski, M.D., FACS.
Plastic and Reconstructive Surgery

# EXHIBIT "C"

## AUTHORIZATION AND CONTRACT FOR SERVICES

I/We, _EDWARD D. & KATHLEEN DiPIETRO_, do make, _FOR AND ON BEHALF OF NICHOLAS W. DiPIETRO_ constitute and appoint Justin J. McCarthy, Esquire, of Exton, Pennsylvania, as my/our true and lawful attorney, to conduct all negotiations, make settlements, receive payments, institute actions at law, or in equity, in any appropriate Court or forum, and in every proper and ethical manner to represent me/us in connection with:

_INJURIES SUSTAINED BY NICHOLAS W. DiPIETRO ON JULY 5, 2011 IN A SWIMMING POOL ACCIDENT AT THE HOME OF JAMES & RHONDA BRISBOIS, GILBERTSVILLE, PA_

I/We hereby ratify, confirm and sanction whatsoever Justin J. McCarthy, Esquire does in connection with the above matter.

I/We hereby agree that my/our attorney, Justin J. McCarthy, Esquire shall be entitled to the following fee:

~~(a)~~ _____ ~~per hour;~~

(b) ___1/3___ of the total (gross) recovery on my/our behalf.

I/We further agree that I/we shall be responsible for any and all out-of-pocket expenses directly attributable to this matter, with said expenses including, but not limited to, investigative reports, medical reports, Court costs, filing fees, deposition fees, witness fees, use and appearance of experts and exhibits.

I/We agree that the out-of-pocket expenses shall be paid by me/us _ONLY IN THE EVENT THAT THERE IS_ ~~irrespective of whether or not~~ a recovery is obtained on my/our

behalf.

I/We further agree that should this matter proceed beyond the filing of post-trial motions, at which stage legal briefs and a review of any trial transcript here would be needed, that Justin J. McCarthy would be entitled to forty percent (40%) of the gross recovery on my/our behalf.

I/We further agree that we have been informed that a specific recovery has not been guaranteed to me/us, however, I/we have been assured that Justin J. McCarthy, Esquire will make every effort to obtain a beneficial result for me/us.

Justin J. McCarthy reserves the right to withdraw as my/our counsel if he determines that the facts and applicable law will not result in a recovery to me/us sufficient to justify the costs, including the attorney's time attendant to the prosecution of this claim. He will use his best judgment in assessing the prospects for a recovery on our part and will do his utmost to locate other counsel to represent my/our interests in this matter.

In the event that I/we elect to terminate my/our attorney/client relationship with Justin J. McCarthy, Esquire, I/we agree that he will be paid an attorney's fee representing one-third (1/3) of any fee earned by my/our new counsel or in the event I/we elect to represent myself/ourselves, Justin J. McCarthy, Esquire shall be entitled to one-third (1/3) of a sum equivalent to the attorney's fee he would have earned had he remained my/our counsel.

In addition, I/we agree to pay Justin J. McCarthy, Esquire any and all costs which he has advanced on my/our behalf as of the time

2

his services are terminated.

IN WITNESS WHEREOF, I/we have hereunto set my/our hand(s) and seal(s) this _____ day of _____, 20____, intending thereby to be legally bound.

_____ July 21, 2011

Kathleen DiPietro  July 21, 2011

_____
July 19, 2011

## LITIGATION COSTS

| | |
|---|---:|
| Court Filing Fee: | $ 580.42 |
| Daniel Westawski, M.D., expert reports | 1,900.00 |
| Dr. Eagar/M. Balmforth, liability experts | 3,490.40 |
| Dr. Janet Edgett, psych. evaluation | 150.00 |
| Jenkins Library Research | 235.00 |
| Magna Legal Service Court Reporters | 835.95 |
| Healthport - Pottstown Hospital records | 70.28 |
| Prestige Photographer | 250.00 |
| Pottstown Oral & Max. records | 36.40 |
| Surf Outlet - purchase of Poolmaster water guns | 32.89 |
| Mail 'n More - ship water launcher to MIT | 86.11 |
| Kinko's/Jack's Camera - color photographs | 109.13 |
| FedEx (3) | 36.00 |
| Travel Expenses to MIT - mileage/tolls, etc. | <u>383.98</u> |
| Total: | $ 8,196.56 |

# EXHIBIT "D"